OPINION
{¶ 1} Michael R. Moore was found guilty by a jury in the Clark County Court of Common Pleas of two counts of murder, with firearm specifications, and one count of having a weapon while under disability. The murder convictions were merged for sentencing. Moore was sentenced to three years on the firearm specification, to be served prior to and consecutively to a sentence of fifteen *Page 2 
years to life on the murder conviction. He was sentenced to an additional five years for possessing a weapon while under disability. Moore appeals from his conviction, raising one assignment of error.
 {¶ 2} "THE DEFENDANT WAS DENIED HIS DUE PROCESS RIGHTS AS THE GUILTY VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 3} Moore contends that the state's key witnesses against him were not credible because they "were ex felons [who] all knew each other, and all had been convicted of carrying concealed weapons, and each could have been the shooter."
 {¶ 4} As a preliminary matter, we note that evidence was presented at trial that several of the state's witnesses had criminal backgrounds, including convictions for the use or possession of drugs and firearms. Moore also had a criminal background. We assume that the jury considered this evidence in assessing the witnesses' credibility.
 {¶ 5} The charges against Moore arose from the shooting death of Charles Humphrey on November 18, 2006. The state's evidence established that Humphrey was shot in the face at close range outside the Game Day bar at East and Pleasant Streets in Springfield in the early morning hours of November 18, 2006. Nearby residents immediately called 911, but Humphrey had died by the time firefighters arrived at the scene.
 {¶ 6} It was undisputed that Moore, Moore's girlfriend Tamika Owens, Humphrey, and several of their acquaintances, including Omari Kittrell and Anaje Muta Ali, had been inside the Game Day bar shortly before the shooting. The men knew one another from time spent together in prison. Moore had been to several bars with Owens, Ali, and Kittrell before arriving at Game Day, and he was driving a silver Cadillac. A surveillance video from the Game Day bar showed Moore placing a gun in his waistband before he entered the bar, and several witnesses testified to seeing him *Page 3 
with a gun at various points during the evening.
 {¶ 7} The witnesses' accounts of the events leading to the shooting were somewhat inconsistent. However, it is clear that Humphrey arrived at Game Day before Moore did. Moore, Owens, Kittrell, and Ali arrived at the bar as it was about to close, near 3:00 a.m. They entered the bar, and one or more verbal exchanges erupted among those present. According to some witnesses, Moore became upset because Humphrey touched Owens inappropriately. According to others, Humphrey made a comment related to Moore's sexual orientation, suggesting that he had engaged in homosexual activity while in prison. In any event, Moore was of the view that he had been "disrespected." He was also briefly separated from Owens in the crowd, which he did not like, and some witnesses testified that angry words were exchanged between Moore and Owens. According to Owens, Moore took her out the back door of the bar, pinned her against the building, and pressed a hard obj ect against the side of her face, leaving a bruise. A Game Day employee testified that Moore had choked and threatened Owens with a gun outside the bar while talking about disrespect. Owens then started walking away from the bar without Moore and called a relative to pick her up.
 {¶ 8} Humphrey left the bar around that same time as Moore because the bar was closing. Surveillance tapes from the bar and from a nearby Ohio Edison facility established that Humphrey was shot less than a minute after leaving the bar. Moore's friends, Kittrell and Ali, testified that they saw Moore shoot Humphrey once at close range, "face to face." Kittrell and Moore then fled in Moore's silver Cadillac. The first police officers who responded to the scene saw the silver Cadillac pulling away. Kittrell claimed that he did not want to flee with Moore, but that he did so out of fear because Moore still had the gun. He further testified that they had driven to northern Kentucky and that Moore had thrown the gun out of the car, perhaps over the Ohio River. Ali claimed that he had fled the scene by paying a *Page 4 
stranger to take him to his truck in a different part of town. Although Moore attempted to pick up Owens moments after the shooting, she refused to go with him. According to Owens, Moore called her the following morning and asked her to tell the police that he had been with her the previous night.
 {¶ 9} Moore's version of events, as testified to at trial, was that Owens became enraged at him over his friendliness toward some of his female cousins at the Game Day bar. He claimed that she stormed off after a confrontation in the back room of the bar, and he attempted to follow her in his car to talk with her. As he was following her, Kittrell showed up and jumped in the car. Moore then left with Kittrell and drove to Cincinnati.
 {¶ 10} Moore asserts that his conviction was against the manifest weight of the evidence. When reviewing a judgment under a manifest weight standard of review, we consider the entire record, weigh the evidence and all reasonable inferences therefrom, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction. Id. at 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 11} The evidence in this case does not weigh heavily against Moore's conviction. Although Moore's testimony casts suspicion on Kittrell and many of the witnesses (including Moore) have criminal pasts which might cause one to question their credibility, the majority of the evidence pointed toward Moore as Humphrey's shooter. To the extent that the witnesses' motives and honesty were at issue, the jury was in the best position to *Page 5 
evaluate which witnesses were the most credible. In our view, the jury did not clearly lose its way and create a manifest miscarriage of justice in convicting Moore. As such, the judgment was not against the manifest weight of the evidence.
 {¶ 12} The assignment of error is overruled.
 {¶ 13} The judgment of the trial court will be affirmed.
GRADY, J. and DONOVAN, J., concur.
(Hon. George M. Glasser retired from the Sixth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Andrew R. Picek
Brett A. Rinehart
 Hon. Douglas M. Rastatter *Page 1